and we request that you reverse and remand for further proceedings. Our next case for argument is Oak Lawn Respiratory and Rehabilitation Center against the Small Business Administration. Mr. Jed, are you hearing us? Yes, I can now, Your Honor. Thank you. Thank you. Ms. Bierman. Good morning, Your Honors. May it please the Court. My name is Tiffany Bierman and I represent the appellants in this consolidated appeal. Oak Lawn, Park Shore, and Forest View. This appeal surrounds the denial of appellants' PPP loans by the SBA based on the sixth interim final rule or the corporate group rule. We are requesting that this court reverse the district court's decision granting summary judgment in favor of the government and denying appellants' motion for summary judgment. Today I will be discussing three reasons why the district court's decision must be reversed. First, the SBA exceeded its authority when creating and implementing the sixth interim final rule. Second, even if the sixth interim final rule is valid, which appellants do not concede, it was retroactively applied to the appellants. And third, the district court improperly found that appellants were part of a corporate group. As for appellants' remaining points, unless the court prefers that I discuss them today, I will defer to our briefing. With respect to the first argument, the SBA's implementation of the sixth interim final rule was in excess of authority. Isn't this just an oxymoron? What's an interim final rule? Why didn't you just call it the rule? The rule. Okay, I will call it the rule moving forward. So the rule, the corporate group rule moving forward, was in excess of the SBA's authority to implement when the CARES Act makes clear that any business concern shall be eligible to receive a PPP loan as long as certain conditions are met. Appellants, in this case, met all the requisite conditions, and therefore they are eligible and shall be eligible to receive a PPP loan. Appellants and I... Let me tell you what my problem with that argument is. You seem to be assuming that it's just self-evident what is a business concern. Is there a statutory definition of that phrase? There is not. It says a small business concern, and under the CARES Act... Is there a statutory definition of business concern? I do not believe that there is. You don't cite one. I didn't see one. But the SBA has rulemaking power, so why can't it define business concern in a way that equates it to a corporate group? So the CARES Act makes clear that it's a small business concern, and under the CARES Act it does define essentially what makes a small business concern, and they set the standards, and they say it's... It doesn't define the phrase business concern. You've already agreed with that. Correct. You are, I think, assuming, though you don't argue for it, that anything separately incorporated under state law must be a separate business concern, and that assumes that state law supplies the definition of business concern. Is there anything in the statute supporting that application of state law? There is not, and... Again, we come back to the fact that the statute does expressly give rulemaking power to the Small Business Administration. Correct, but the statute does state that the rulemaking power is limited to what's actually set forth in the CARES Act, and the CARES Act makes... One final question. The parties haven't joined issue on this, but it seems to me relevant. It's often true that federal law looks through corporate forms to see if there's a corporate group. It does that in tax. It does that in labor law. It's easy to cite those cases. Why is it forbidden for the Small Business Administration to do that by regulation when it's the norm in other parts of federal law? The Small Business Administration is prohibited from doing that in this case, or it's in excess of the authority to do that in this case, because the CARES Act directly does not provide it with that authority to do so. It would if it defined business concern by reference to state law, but we've agreed that it doesn't.  So the CARES Act states the requirements to be eligible to receive a PPP loan, and it states that a business concern shall be eligible for a PPP loan as long as certain conditions are met. One of those relates to the size. And if the SBA did have the authority, it would be expressly within that, and the language of the CARES Act goes beyond that. But regardless, the SBA still, or the district court still erred when it found that the sixth interim final rule, or sorry, the rule was not retroactively applied to the appellants. And the timeline is important for that argument. The appellants in this case all applied for their loans on April 6th. The loans were approved on April 30th and May 1st, and then the rule becomes effective on May 4th. And the district court found that the date of the promissory note was when the transaction was completed for purposes of this, and so therefore the appellant should have known that this rule went into effect, and then they had an affirmative duty to withdraw their loans, despite the fact that their loans were already approved. But if you look to the record and the promissory notes, which are on pages 7, 370, and 407 of the GA, the promissory notes are all dated, the date of the approval of the loans, the date that the loans were approved. And so therefore the fact that the promissory notes were ultimately signed at a later date, the argument doesn't make sense then, because the transaction and the loan date on those promissory notes were the date that the loans were approved. And therefore the loans were approved on before the effective date that the rule went into effect, and therefore the rule could not be applied to appellants retroactively. And that's exactly what the case law supports, is that the retroactive application can't impose additional duties on the appellants when the transaction is already complete. And the SBA's own rules, which the SBA in this case states that these rules are irrelevant, but the SBA's own guidance states that the borrowers may rely on the rules and guidance available to them at the time of application, which is telling that that's how the SBA should and would interpret when appellants were applying for this loan. And it's important to also note that the context surrounding the CARES Act generally. Appellants are nursing homes and rehabilitation centers that applied for their CARES Act loans in the heart of the COVID-19 pandemic, and they wanted to continue and did continue to employ their staff who were caring for the most sick individuals during this time. And they applied for their loans under the guidance and rules available to them and were subsequently approved for those loans and then therefore used the money as intended. And therefore, their loans should have been forgiven. And it was an error for the district court to find otherwise. And even if the rule was applied properly to my clients, which I do not contend that it was, the district court did error in finding that they were part of the corporate group. Ms. Spearman, along those lines, I guess, and along the lines of the question by Judge Easterbrook. So with regard to that argument, we're trying to figure out what common parent means, right? Yes. And your clients rely upon kind of the state law definition of partnerships and that partnerships cannot be LLCs. And you cite to various state statutes, et cetera, et cetera, as well as the Uniform Partnership Act. And my question is, why does state law control how the SBA defines a common parent? It does not. State law does not control. And so why can't the SBA then define common parent as a, let's say, an association loosely? Let's find some other language. An association, in fact, of owners of a group of more than one owner that combined own more than a majority share of various entities, which is basically what the SBA did. Yeah. The thing is, is the SBA did do that with respect to my clients, but that's not specifically defined in the rule nor anywhere in the CARES Act. There's no definition. Well, I mean, I think, I guess the way I read it is that's how, they're saying that such an association falls within the umbrella of what is meant by common parent. And I guess my question is, you know, given the fact that the SBA is explicitly given rulemaking powers, should we defer to the way it interprets its own rules and regulations? No. And the reason for that is because the way that it interpreted, the way that the SBA has interpreted that goes against the direct language of the CARES Act. And the rulemaking power of the SBA is- That's where you lose me. Direct language, we're back to an undefined term. Let me ask you a practical question along the same lines. Could every partner at Kirkland & Ellis have received $10 million from the federal government through loan forgiveness under this statute? No, Your Honor. Why not, on your view? Well, because- Let me tell you how your view applies. If you get a letter from Kirkland & Ellis, it says, Kirkland & Ellis, and then in small type, a partnership including professional corporations. All the partners at Kirkland & Ellis are separately incorporated as professional corporations. And the partnership is a partnership of their professional corporations. So it sounds like under your view, every partner at Kirkland & Ellis is a business entity entitled to receive a loan and have $10 million written off. Isn't that the logical consequence of your view? I wouldn't necessarily say that that's the consequence of how this rule applies all in all. It's not how the rule applies. The rule forbids that by treating them all as a single entity. I'm asking about the consequences of your argument. So the two owners in this case, which- I'm not asking about this case. I expressed that I am asking about Kirkland & Ellis. Yeah, in that case, if that's the facts that you have it, that these partnerships or these partners all own a separate corporation that then runs one business entity, then maybe- No, every partner is separately incorporated. And the partnership is a partnership of their corporations. That's how Kirkland & Ellis is structured. Okay. Based on that, I mean, I still don't think in that case, because it's different, and I know you're not asking about this case, but I do think that that's distinguishable. And the rule as applied in that case-  Because there's additional layers there. No, there aren't. There's a corporation, and then there's a group, a partnership. And the SBA's rule would disqualify the individual partners from getting loan forgiveness under this program. I don't understand why your argument doesn't say that's all a big mistake and every partner could have had $10 million written off. So in that specific situation, it's not that they're automatically entitled to $10 million. The CARES Act does state that there's either the payroll-based amount or $10 million, whatever is less. And in that case, all of the partnerships- I mean, if they are individual partnerships but are looking to get loans for their individual LLCs as well, then the CARES Act makes clear that they're allowed to do that. And I'll reserve my remaining time for rebuttal. Thank you. Certainly, Ms. Bierman. Mr. Jed. Good morning, Your Honors. Adam Jed on behalf of the federal government. And first of all, thank you so much for allowing me to participate by Zoom today. May it please the Court. As I think a number of the questions this morning have gotten at, the PPP was established as part of the Section 7a loan program where it is well established that SBA has broad powers to issue various rules and regulations to allocate limited funds and advance a range of goals. SBA has long done that. They've long declined to issue loans to statutory eligible categories of businesses like foreign businesses or illegal businesses. They've long capped the size of loans. They've long treated separate businesses as being affiliated for purposes of their size caps. And so here, when the PPP ran out of funds within 13 days, SBA reasonably responded by saying, we're going to have an aggregate $20 million cap on loans that are given to businesses with a common parent. Mr. Jed, on that cap, what's your response to the Rehabilitation Center's argument that it was arbitrary and capricious for the SBA to decide that $20 million cap without explaining how it reached that specific number? I mean, so candidly, I'm actually not sure that they've specifically focused in on the number. I know there's a little bit of argument in their opening brief about lack of explanation. I think if Your Honor just looks at the preamble to the rule, not the interim final rule, the rule, Your Honor will sort of see the explanation for why it set up a cap, and it says that the Secretary of the Treasury and the SBA Administrator made the determination. Conceitedly, there is not like an actuarial explanation for why they landed on $20 million rather than $15 million or $20 million rather than $25 million. And that's all I'm asking you. We saw the preamble. We see the reasoning about the financial constraints of the pool of money. I'm asking about an explanation for that specific choice of a number. Yeah, I am not aware of an explanation for that specific choice of a number. I do just want to say the plaintiffs, to my knowledge, have not raised any argument along those lines. And inevitably, of course, if you're going to pick a number, a number is going to be sort of somewhat arbitrary, but because they haven't raised an argument along those lines, we just haven't had an opportunity to respond to that argument, nor do the administrative law judges have any opportunity to put any sort of further meat on the bones. Mr. Judd, can I pose a hypothetical to you with regard to the SBA's kind of definition of common parent? Say, and I wish I had a whiteboard here, but I don't. Say that there's company A, okay? And company A has three owners. You have A, which owns 90%, B, that owns 5%, and let's call the third owner X, that owns 5%, okay? I hope I'm going to be able to track this. I'm doing my best. Believe me, it was much more complicated when I started, so... I appreciate that. In company B, A owns 5%, okay, instead of 90%. B owns 50%, and a third owner, let's call Z, owns 45%. So in company A, A and B together own 95%. In company B, A and B together own 55%. Would you consider companies A and B to be controlled by a common parent? So I... Under the reasoning, the OHA reasoning, it seems that the SBA would consider companies A and B to be owned by a common parent, but those ownership interests and the entities and the way those companies are structured are very different. Well, Judge Lee, I mean, just stepping back for a moment, I think it's black letter law and all the ALJs kind of explained this, that when you get into the realm of what sometimes gets called an implied partnership or a partnership in fact or an operating partnership or sort of something along those lines, it's a very kind of fact and intent specific inquiry. So, you know, without... Conceitedly, without kind of a lot of knowledge of how different states have approached particular fact sets, I don't know that I'm in a strict position to comment on it. What I will say, just because I do want to try to engage with Your Honour's question, is the plaintiffs haven't made any argument, even in this court, that as a general matter, they wouldn't constitute an implied partnership. I think their only argument with respect to implied partnership is this very specific legal argument where they seem to be saying that because they conducted their business by owning LLCs, that therefore they cannot be treated as a partnership. And, you know, I mean, as to that narrow argument, as an initial matter, they never presented that before the agency and they make an argument for the first time in their reply brief on why that should be disregarded. I'm just trying to probe into kind of the... ..whether there is some sort of... ..what the limiting principle is with regard to the definition. Let's say we defer to the agency's definition. I'm just trying to figure out what that definition is, frankly, because you can foresee an instance where if you have a scenario where Company A has three owners, Company B has three owners, and only two of the owners overlap, where the people in control of Company A and Company B on the ground actually might be different. So, for example, Company B might be controlled by that third owner, whereas Company A might be controlled by one of the two owners that the SBA considers to be within this implied partnership. And yet, under the SBA's interpretation, both companies would be under a common parent. And so that, to me, strikes me as... I don't know how a business concern is supposed to structure its businesses to try to address a rule like that when it's just...it seems kind of... ..the permutations may not actually reflect the real business dynamics and control mechanisms of the companies that we're talking about. Judge Lee, I need to push back on the premise of the question because for the purposes of the ALJ opinions that are under review and for the purposes of this specific question, whether they constitute an implied partnership, again, this is not an argument the plaintiffs have made, but I do want to engage with Your Honour's question. For those purposes, the ALJs were not applying some SBA constructive rule. The ALJs were just applying the kind of partnership law of Uniform Partnership Act in 49 states in this country. And that law tends to approach this as a very kind of fact-specific... But under the Uniform Partnership Act, you know, it does say that it is to be treated as a partnership unless the parties have designated an association or entity under some other provision. And here, the plaintiff's argument is, well, they decided to organise an LLC. And so even under the terms of the Uniform Partnership Act, they wouldn't fall within the definition of a partner because of the way they chose to organise themselves. I mean, that's Section 201, I think, Section 201B of the Uniform Partnership Act. Well, Judge Lee, I think, in that sense, the plaintiffs and the government are just talking past each other, and I will thank you for the opportunity to clarify this. Well, I guess, you know, I'm pushing back because you can't, on the one hand, rely upon the Uniform Partnership Act and then say only part of it applies, the part that favours us, right? I mean, you have to engage with the reasoning. And I guess I could perhaps maybe see some sort of reasoning and interpretation that might make sense putting the Uniform Partnership Act to the side, but that's not what the ALJs did here, right? And aren't we limited to analysing the reasoning that the OHAs actually put forth before us? And I'm trying to figure out whether or not it actually, you know, extends beyond the particular fact situations that we're dealing with here. I mean, here you have, you know, two kind of entities, an individual entity, and they own 50%, and that's kind of consistent throughout. Although I think in one of the plaintiffs, there is actually a third ownership interest that is involved. And so I'm just trying... You know, there are scenarios where people that might... SBA under the current definition might consider to be a common parent, but actually neither of which control the actual entity in the real world. I think that question is actually just misunderstanding the ALJ decision. So if I could just have an opportunity to explain that. Neither we nor the ALJs are, as maybe your obvious question suggested, accepting parts of the Partnership Act and rejecting other parts of the Partnership Act. And so I just want to explain that. We fully understand that if you have some entity that is formed as a corporation, then you can't simultaneously treat that entity as a partnership. So if this kind of, you might call it conglomerate or kind of parent that constitutes Mr. Bliscoe and Gubin Enterprises, if they had formed some LLC, you know, nursing home parent LLC, then under the Uniform Partnership Act, they would not be treated as a partnership because they would have formed themselves under some other law. Instead, that kind of parent entity has not formed itself under any law. It owns various sub things. It owns these various LLCs. And for all we know, it may also be conducting other business that does not involve the ownership of LLCs. And I think your honors actually focusing on the example of the one LLC that has a third owner kind of underscores the point because you've got this parent that is, you know, investing, managing in a number of different entities. And it's particularly with the one with the third owner, it's reasonably clear that it's not that Mr. Bliscoe and Gubin Enterprises have just set themselves up as that LLC. There's a third owner that's also involved in that LLC. So essentially, there are kind of two different levels of ownership structure. And so, you know, Forest Lawn LLC is not being treated as a partnership. Forest Lawn LLC is an LLC. But the Bliscoe-Gubin Enterprises partnership is being treated as a partnership. And that has not formed as an LLC. And that's why I don't think we're disregarding the Uniform Partnership Act at all. Mr. Jett, I have a completely different question for you. Yes, your honor. Which is where else in the country is this issue being litigated? I can't believe it's only in the Seventh Circuit. So obviously, this has come up in a number of district courts. I don't know the universe of district court litigation. I can tell you that for court of appeals litigation, this rule, the corporate group rule, is the government one in district court. And there is currently an appeal that is in the process of being briefed in the Fourth Circuit. There is also a Fourth Circuit case and a, I think, two Fifth Circuit cases, neither of which have been briefed yet, that raised the related question about rules carried forward from Section 7A that excluded certain categories of businesses. And I should point out, I should just note this from the plaintiff's reply brief, the plaintiff's reply brief in a footnote makes new argument for the first time drawing on a DDC opinion, where that DDC opinion did also uphold the validity of the corporate group rule. OK, thank you. Unless the court has any other questions, you know, obviously, I'm happy to engage with retroactivity issue. Maybe just briefly, because I got some questions about the implied partnership issue, just because we haven't had a chance to explain this yet. I did just want to briefly say, because that argument was never even presented before SBA, I think it's just not properly before the court and therefore just forfeited under governing regulations. In the reply brief, the plaintiffs essentially say that there should be no forfeiture because they just never actually had an opportunity to be able to make the argument before SBA. I just very briefly just wanted to sort of flag for your honors. I think they actually had three opportunities to make the argument before SBA. And I'll give these chronologically, though conceitedly, I think the sort of strength of that opportunity probably increases as time goes on. So first, just because Blisco and Gubman Enterprises are just essentially running a conglomerate together. When SBA's initial decision says that the businesses owned by them constitute a corporate group, they probably should have been explaining why it is that they wouldn't be being treated as a partnership. And then second, in briefing before the ALJ, SBA made essentially the same arguments, but just without the word partnership. But if you look, for example, at our appendix, page 185 or page 472, you'll see maybe a little less so in Oak Lawn, but on the two pages that I gave your honors, you'll see the government sort of saying all of the same things. But most importantly, and this is really where they absolutely had a clear opportunity to make this argument, after the ALJs issued the decision and spelled it out partnership and cited various partnership law, they could have filed the motion for reconsideration. And in fact, that's how this process works. If your honors look to 13 CFR 134.1211 B and C, it describes an ALJ decision as a, quote, initial decision. Now, it's an initial decision that will become the final decision if there's no further petition and no further briefing. But the next step after an initial decision is the parties can then request reconsideration and say, we see you've made a mistake. Here's why you've made a mistake. So they had every opportunity to present that set of arguments before SBA. And so, Judge Lee, you know, of course, we're certainly happy to win on the merits of the implied partnership issue. But for that reason, I think the court just wouldn't have to reach it. And unless the court has any other questions, we're happy to rest on our briefs. Thank you, Mr. Judge. Thank you, Your Honor. Further, Ms. Beerman. I'll first start with Mr. Judd's final argument that the argument was never raised at the administrative level. So there was no reason for it to be raised at the administrative level when the final loan review decision state that the impellents were ineligible for their loans based on the corporate group rule. They were part of a corporate group that exceeded $20 million is what the final loan review decision effectively said for all three of these plaintiffs. And nothing in the CARES Act, nothing in the corporate group, the rule itself, states that implied partnerships would be effectively made to any owners of businesses. And further, nothing in the rules require that a motion for reconsideration is filed at the administrative level. It says that you can appeal a final decision to the district court, which is exactly what the appellants did in this case. The implied partnership argument was not made or could not be made because there was not clarity in the final loan review decision. And it's on the SBA to make it clear in the final loan review decision why they are denying eligibility for my clients. And in the final loan review decision, they could have stated that we are considering the owners of these businesses to be an implied partnership for purposes of these rules, but when my clients read and looked at the final loan review decision, it did not state that an implied partnership would be made upon these individuals. And it did, you know, as Judge Lee's examples show, there's different ownership structures and there's different boots on the ground. And, you know, the counsel had brought up the concept of affiliation. You know, these loans were not denied based on affiliation. These loans were denied based on a corporate group rule, which counsel then in brief had actually said that it's just the cap and actually has nothing to do with eligibility. But I think it's clear here that the SBA intended to deny eligibility for my clients based on that. Therefore, we would ask that this court reverse the decision. Thank you. Thank you, Ms. Bierman. The case is taken under advisement.